

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 6570 | DATE | 10/11/2002 |
| CASE TITLE | Bernard Wilson vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Bernard Wilson's motion to vacate, set aside, or correct sentence pursuant to Title 28, United States Code, Section 2255 is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | OCT 15 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 27 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| EF | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**OCT 1 5 2002**

BERNARD WILSON, )
)
    Movant, ) No. 99 C 6570
)
vs. ) HONORABLE CHARLES R. NORGLE
)
UNITED STATES OF AMERICA, )
)
    Respondent. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

Before the court is Bernard Wilson's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is denied.

### I. BACKGROUND[1]

In 1994, Wilson was participated in a large scale conspiracy to distribute massive amounts of cocaine in Northern Illinois. Beginning in April 1994, a joint federal and local drug task force infiltrated the conspiracy. In July of 1994, undercover informants and officers set up a deal where undercover agents were to purchase several hundred kilograms of cocaine at a price of $20,000.00 per kilo. One of Wilson's Co-Defendants, Manuel Garcia, said that 740 kilos were currently stored in Rockford, Illinois, but that 300 of them were promised to another purchaser. Garcia reassured the undercover agents that more cocaine would be coming within a few days, and that he would be able to supply them with all the cocaine they wanted.

---

[1] For more detail concerning the Wilson's crimes, see United States v. Wilson, 134 F.3d 855 (7th Cir. 1998), affirming his conviction and sentence.

27

The initial deal was scheduled for July 17th, and called for a purchase of 300 kilograms. After some unexpected delays and changes, undercover officers purchased almost 350 kilos of cocaine with an average purity of 87%. Immediately following the first deal, several of the conspirators, including Wilson, were arrested.

The undercover operation continued into August, with other conspirators agreeing to sell another 500 kilos to undercover officers. During the course of events, one of the conspirators told an officer that "tons" of cocaine were available. The undercover operation ended in August, with a second completed transaction of over 200 kilos of 93% pure cocaine. Subsequent searches found another 263 kilos of 96% pure cocaine.

A detailed timeline of Wilson's arrest and pre-trial phase is necessary because he raises several speedy trial issues. As noted above, Wilson and several co-conspirators were arrested on July 18, 1994. On July 19, 1994, a criminal complaint was filed against Wilson, and an attorney, Michael Robbins, filed an appearance on Wilson's behalf. Wilson and some of his Co-Defendants moved to continue the preliminary examination and detention hearing until August 2, 1994.

On August 11, 1994, then Chief Judge Moran granted the government's motion under 18 U.S.C. § 3161(h)(8)(A) to extend by 60 days the time in which to file an indictment in Wilson's case. The court found that the extension was necessary because of: (1) the number of defendants in Wilson's case and a related case; (2) the large number of taped conversations and other evidence to be presented to the grand jury; (3) the pursuit of leads as to the identity and location of other individuals involved in the criminal enterprise; (4) the ongoing nature of the investigation; and (5) the unusual and complex nature of the facts upon which the grand jury had to base its determinations.

For these reasons, the court extended the time to file the indictment until October 14, 1994. (See Resp. Ex. 1.)

On September 29, 1994, the Government again moved to extend the time in which to file the indictment. The court granted the motion for the same reasons it granted the August 11, 1994 extension. Per the September 29, 1994 order, the Government had until December 12, 1994 to indict Wilson. (See Resp. Ex. 2.)

On October 4, 1994, another attorney, Kevin Milner, filed an appearance on behalf of Wilson. Mr. Milner represented Wilson throughout Wilson's trial and sentencing.

The Government filed the indictment against Wilson and ten Co-Defendants on December 6, 1994. Wilson was arraigned on December 8, 1994. At that time, the court set a deadline for pre-trial motions of January 19, 1995, and set a status hearing for January 20, 1995. The court also granted the Government's motion to exclude time from December 8, 1994 to January 20, 1995.

On January 19, 1995, Wilson moved the court for an extension of time in which to file pre-trial motions. The court granted Wilson's motion, and set a status hearing for February 28, 1995, and excluded time until that date.

At the status hearing on February 28, 1995, the court set a trial date of July 10, 1995, and continued the status hearing to April 27, 1995. The court granted the Government's oral motion to exclude time from February 28, 1995 to April 27, 1995.

On March 30, 1995, the court granted Defendants' joint motion to reset the trial date. The court ordered that the delay was charged to Defendants and that time was excluded.

At the April 27, 1995 status hearing, the court reset the trial date to August 22, 1995. The court continued the status hearing to July 25, 1995, and granted the Government's oral motion to exclude time from April 27, 1995 to July 25, 1995.

At the July 25, 1995 status hearing, the court ordered that the August 22, 1995 trail date was to stand. However, on August 9, 1995, one of Wilson's Co-Defendants moved the court to continue the trial. The court granted the motion, and reset the trial to September 25, 1995. The Government made an oral motion to exclude from August 9, 1995 to September 26, 1995 based on the ends of justice being served, which the court granted.

After the August 9, 1995 hearing, the court dealt with various motions brought by both Defendants and the Government, including a change of plea from one of Wilson's Co-Defendants. The case proceeded to a jury trial beginning October 2, 1995. During the course of the trial, Wilson testified in his own defense. The case went to the jury on November 2, 1995, which returned guilty verdicts the following day.

Wilson had a new attorney, William Trapp, appeal his conviction and sentence. Wilson argued that evidentiary issues, a jury instruction issue, and a sentencing issue required reversal. The Seventh Circuit rejected Wilson's arguments, and affirmed his conviction and sentence. See United States v. Wilson, 134 F.3d at 873. At several points in its opinion, the Seventh Circuit commented on the overwhelming evidence of Wilson's guilt. See id. at 864, 865, 867 n. 5.

Wilson now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. All of Wilson's arguments center on a claim of ineffective assistance of counsel. The Government has responded in writing, and the court has heard oral argument from all counsel of record. All issues having been briefed and argued, Wilson's motion is ripe for ruling.

## II. DISCUSSION

### A. Standards under 28 U.S.C. § 2255:

Section 2255 allows a prisoner in federal custody to move a court to vacate, set aside or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255 ¶1. If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. at ¶2. The court is to liberally construe a prisoner's pro se petition, but the burden remains with the petitioner to demonstrate a constitutional violation.

There is no automatic right to an evidentiary hearing on a § 2255 motion. See Rodriguez v. United States, 286 F.3d 972, 985-86 (7th Cir. 2002). The court may deny a § 2255 petition without a hearing if the allegations are vague, conclusory, or incredible, or if the record before the court demonstrates that matters can be resolved without a hearing. See id.

### B. Standards for ineffective assistance of counsel:

Ineffective assistance of counsel claims are governed by the familiar two prong test of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). A criminal defendant must satisfy both prongs of the Strickland in order to demonstrate ineffective assistance of counsel. See Ashford v. Gilmore, 167 F.3d 1130, 1135 (7th Cir. 1999). First, there must be evidence that counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See Strickland, 466 U.S. at 687-88. Courts are deferential to counsel's performance;

5

indeed, the court is to presume that counsel's performance "falls within the wide range of reasonable professional assistance." Id. at 689; see also Drake v. Clark, 14 F.3d 351, 355-57 (7th Cir. 1994).

Second, the deficient performance must have prejudiced the defense, meaning that but for the deficient representation, there is a reasonable probability that the proceedings would have had a different outcome. See Strickland, 466 U.S. at 694. The level of prejudice required to succeed under Strickland is high. See Ashford, 167 F.3d at 1134-35. "[A] criminal defendant alleging prejudice must show 'that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)) (in turn quoting Strickland, 466 U.S. at 687). Strickland prejudice will only be found if the court's confidence in the outcome is undermined as a result of counsel's performance. See Brown v. Sternes, – F.3d –, No. 01-2326, 2002 WL 2014644, at *12 (7th Cir. Sept. 4, 2002); Morris v. United States, 264 F.3d 726, 727 (7th Cir. 2001).

Wilson raises several arguments involving speedy trial issues, and a smattering of other issues concerning the performance of trial and appellate counsel. The court addresses all of Wilson's arguments in turn.

### a. Speedy trial issues:

Wilson claims that his trial counsel was ineffective for: (1) failing to move to dismiss the indictment under the Speedy Trial Act 18 U.S.C. § 3161 et seq.; (2) failing to move to dismiss the indictment for violating Wilson's sixth amendment right to a speedy trial; (3) failing to oppose the Government's motions to exclude time; and (4) failing to move to sever Wilson's trial based on his constitutional right to a speedy trial. The court rejects all of these claims as a basis for § 2255 relief, and in so doing, determines that a hearing is not necessary. See Rodriguez, 286 F.3d at 985-86.

### i. Indictment:

First, Wilson asserts that counsel should have moved to dismiss the indictment because he was arrested 141 days before the indictment was filed. The Speedy Trial Act requires a person to be indicted within 30 days of arrest, not counting days that are properly excluded from the 30 day calculation. 18 U.S.C. §§ 3161 (b) & (h). Wilson was arrested on July 19, 1994, so barring any proper exclusions, he should have been indicted by August 19, 1994. On August 11, 1994, the Government sought and obtained from then Chief Judge Moran an extension of time in which to indict Wilson, extending the August 11th deadline to October 14, 1994. See 18 U.S.C. § 3161 (h)(8)(3). On September 29, 1994, the Government sought and received a second extension of time, until December 12, 1994, in which to indict Wilson. The indictment was filed on December 6, 1994, several days before the Government's extension of time to indict expired and the speedy trial clock would re-start. Thus, there was less than 30 days of non-excluded time between Wilson's arrest and indictment. Moving directly to the prejudice prong of Strickland, there was no prejudice to Wilson when counsel did not move to dismiss the indictment. This claim is denied on its merits.

### ii. Sixth amendment:

Wilson asserts that his sixth amendment right to a speedy trial was violated because he was arrested and in custody for over fourteen months before he was brought to trial. The sixth amendment right to a speedy trial is distinct from the statutory right to a speedy trial. See United States v. Ward, 211 F.3d 356, 360-61 (7th Cir. 2000). The court uses a four factor balancing test to determine whether a defendant's sixth amendment right to a speedy trial has been violated. See id. (citing Doggett v. United States, 505 U.S. 647, 652 (1992) and Barker v. Wingo, 407 U.S. 514, 530-33 (1972)). The factors are: (1) the length of the delay before trial; (2) whether the defendant is to

7

blame for the delay; (3) whether the defendant asserted his speedy trial rights; and (4) whether the defendant was prejudiced by the delay. See Doggett, 505 U.S. at 651 (citing Barker, 407 U.S. at 530).

The first factor, the length of delay, has been described as the trigger mechanism that begins the court's analysis. There is no hard and fast rule as to whether a pre-trial delay will require an analysis of the remaining factors. See Barker, 407 U.S. at 530-31 (". . . the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). But, a delay that approaches one year is "presumptively prejudicial," and will normally require the court to examine the Barker factors. See Doggett, 505 U.S. at 652 n. 1. In this case, Wilson went to trial almost fifteen months after he was arrested. Notwithstanding the fact that Wilson was indicted along with ten other defendants in a conspiracy case, the court will examine the remaining Barker factors. The court emphasizes that it does so only for the purpose of analyzing whether Wilson's counsel was ineffective for failing to raise the issue. The court does not intend to imply that the delay in Wilson's case was excessive.

The second factor is whether the defendant is to blame for the delay. "'A defendant's claim that the government violated [his] right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay.'" United States v. Mitchell, 957 F.2d 465, 469 (7th Cir. 1992) (quoting United States v. Blanco, 861 F.2d 773, 778 (2nd Cir. 1988)). Here, Wilson sought additional time in which to file pre-trial motions, and then filed several substantive pre-trial motions and motions to join Co-Defendants' motions. Later, Wilson and his Co-Defendants made a joint motion to continue the trial date, which the court granted. In so doing, the court noted that Defendants were responsible for the delay. The case was further complicated by the fact that it

8

involved a complex drug conspiracy with multiple Defendants, some of whom were fugitives. In addition, many Spanish recordings needed to be translated. At all points along the way, the court excluded time from the speedy trial clock. On these facts, counsel would have had no reason to bring a motion to dismiss based on a sixth amendment right to a speedy trial.

The third factor is whether Wilson asserted his speedy trial rights. He did not. Indeed, Wilson sought extra time from the court on at least two occasions, and used the extra time to prepare for trial and to submit multiple substantive pre-trial motions. All of Wilson's pre-trial conduct was inconsistent with an assertion of speedy trial rights. The fourth factor, prejudice due to delay, also weighs against Wilson, because he benefitted from the additional time to prepare.

The preceding discussion makes clear that counsel's decisions about pre-trial extensions did not fall below objective standards for reasonable representation or prejudice Wilson's case. See generally Strickland, 466 U.S. at 687-89; Brown, 2002 WL 2014644, at *12; Morris, 264 F.3d at 727. Counsel used the additional time to prepare pre-trial motions on Wilson's behalf, and to otherwise prepare Wilson's trial defense. It is not unusual for a multi-defendant drug conspiracy case to have a pre-trial phase that lasts more than a year. Both the Government and Defendants filed pre-trial motions that demanded the resources of the court. Some Defendants pleaded guilty prior to trial, language translations were required, and the court excluded time at the request of Defendants and the Government. In such circumstances, the sixth amendment was not offended simply because of an approximate 15 month pre-trial delay. This claim is denied on its merits.

### iii. Severance and time exclusions:

Next, Wilson argues that his counsel was ineffective for not seeking a severance on speedy trial grounds, and for acquiescing to the Government's motions to exclude time. This claim is

without merit for the reasons discussed in the previous section. Wilson's counsel properly sought and obtained additional time to file pre-trial motions, and then took advantage of that additional time to prepare Wilson's defense. It was clear during the pre-trial phase that all Defendants, including Wilson, wanted enough time to prepare their defenses. There was no basis for any counsel to seek a severance in order to go to trial sooner, and certainly no basis to object to the Government's motions to exclude time. It is disingenuous for Wilson to have sought and received additional time to prepare for trial, and now claim that the pre-trial delay offended the constitution.

### b. Remaining counsel issues:

Wilson asserts that trial counsel was ineffective for: (1) failing to protect him from impeachment evidence; (2) failing to properly handle evidentiary issues; and (3) failing to raise a sentencing issue. Wilson also argues that the cumulative effect of trial counsel's errors deprived him of a fair trial, and that appellate counsel was ineffective for failing to attack trial counsel's performance. Not one of these issues has merit.

### i. Impeachment evidence:

Wilson testified at trial, and then was subject to cross-examination by the Government. Wilson asserts that his counsel should have done a better job of safeguarding him from impeachment concerning phone calls made from Wilson's cell phone, Wilson's history of drug use, and Wilson's travels to El Paso, Texas.

Wilson admits that he perjured himself during his direct testimony about his drug use and trips to El Paso, which came out during cross examination. Wilson now claims that his drug use should have been brought out during direct examination, so as to bolster his credibility with the jury. Courts give wide latitude to counsel's tactical choices. See Strickland, 466 U.S. at 687-89; Drake,

10

14 F.3d at 355-57. Counsel's decision not to explore Wilson's past drug use was well within the acceptable range of decisions. Similarly, the argument that counsel should have saved Wilson from his own perjury goes nowhere. Counsel cannot instruct a client or witness to lie. If the client or witness chooses to do so anyway, counsel cannot be accused of ineffective representation. Wilson was caught in a lie. The responsibility falls on Wilson, not his counsel. This claim is denied on its merits.

Wilson makes a related argument that counsel should have moved to allow Wilson to testify in surrebuttal. Counsel did so, but the court denied the motion. See United States v. Wilson, 134 F.3d at 866-67 (holding that the district court's refusal to allow Wilson to testify in surrebuttal was harmless error). This claim has no basis in fact, and is denied on its merits.

### ii. Evidentiary issues:

Wilson asserts generally that his counsel should have objected to what he claims was improper cross examination. Wilson, however, fails to adequately develop this point, and provides the court with only a bare allegation that the Government engaged in "witness vouching." The prosecution cannot engage in witness vouching, but may impeach a witness' credibility and comment on that credibility during argument. See United States v. Anderson, No. 01-1104, –F.3d–, 2002 WL 31086301 (7th Cir. Sept. 19, 2002). Wilson's bare conclusions of "witness vouching" fail to demonstrate counsel's ineffectiveness, or even show that an evidentiary hearing is necessary. See Rodriguez, 286 F.3d at 985-86.

Wilson also complains about the Government's introduction of video tape evidence, claiming that the tape was irrelevant. But, Wilson's argument demonstrates that the tape was relevant, because he testified about the burial of three kilograms of cocaine in the same area that was

11

portrayed in the video tape. The substance of Wilson's argument goes towards defusing the effect of the tape, not its relevancy. The issue here is another step removed because Wilson asserts that counsel was ineffective for not objecting on relevancy grounds. The record demonstrates that the tape was relevant and that Wilson's counsel cross-examined the Government's witnesses about the tape. That record is sufficient to deny Wilson's claim of ineffective assistance. See id.

### iii. Sentencing issue:

The next issue is whether Wilson's counsel was ineffective for not seeking a discretionary downward departure pursuant to U.S.S.G. § 2D1.1, Note 14. The argument is without merit. Note 14 vests the sentencing court with discretionary authority to grant a downward departure when certain conditions are present. Wilson raised the sentencing issue on direct appeal, where it was rejected by the Seventh Circuit. See United States v. Wilson, 134 F.3d at 869-70. Even if Wilson's counsel had raised the argument, the court would have rejected it because Wilson was not qualified for a mitigating role adjustment, and because Wilson's 200 month sentence did not overrepresent his culpability. Thus, Wilson cannot demonstrate prejudice coming from counsel's decision not to pursue a downward departure pursuant to Note 14.

### iv. Cumulative effect and appellate counsel:

Wilson's final arguments are that the cumulative effect of purported errors by trial counsel deprived him of a fair trial, and that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal. Both of these claims are without merit because Wilson has failed to demonstrate even a single instance of ineffective assistance of trial counsel.

### III. CONCLUSION

For the foregoing reasons, the court denies Wilson's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

IT IS SO ORDERED.

ENTER:

*Charles R. Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 10-11-02